## No. 11-1258

# United States Court of Appeals for the Fourth Circuit

THOMAS J. GAGLIARDO,

*Appellant,*

*and*

DEBORAH ASHTON PARSONS,

*Plaintiff,*

*v.*

PENINSULA REGIONAL MEDICAL CENTER,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Maryland at Baltimore in No. 08-CV-3255 (Hon. Marvin J. Garbis, Senior Judge)*

## BRIEF OF APPELLANT

THOMAS J. GAGLIARDO
THE GAGLIARDO LAW FIRM
8401 Colesville Road
Suite 315
Silver Spring, MD 20910-3312
(301) 589-1900

*Attorney for Appellant*

AUGUST 15, 2011



UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. __11-1258__    Caption: __Thomas J. Gagliardo, et al. v. Peninsula Regional Medical Center__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Thomas J. Gagliardo__ who is __appellant__, makes the following disclosure:
(name of party/amicus)          (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

__/s/ Tomas J. Gagliardo__                          __8/15/11__
(signature)                                          (date)

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURES STATEMENT ............................................ i

TABLE OF AUTHORITIES ........................................................ iv

STATEMENT OF JURISDICTION .............................................. 1

STATEMENT OF THE ISSUE ....................................................... 2

STATEMENT OF THE CASE ...................................................... 3

STATEMENT OF FACTS ............................................................ 5

SUMMARY OF THE ARGUMENT ........................................... 10

STANDARD OF REVIEW ............................................................ 11

ARGUMENT ................................................................................ 12

    A.  SANCTIONS CANNOT BE IMPOSED WITHOUT A
       FINDING OF BAD FAITH AND THAT THE FEES
       CLAIMED AS SANCTIONS WOULD NOT HAVE BEEN
       INCURRED BUT FOR THE BAD FAITH CONDUCT. ................ 12

    B.  SUIT WAS BROUGHT IN THE DISTRICT COURT IN
       GOOD FAITH. IT WAS NOT ONLY A LEGITIMATE
       EXERCISE OF DISCRETION TO VOLUNATARILY SEEK
       ITS DISMISSAL, IT WAS IN THE INTEREST OF JUDICIAL
       ECONOMY TO DO SO.................................................................. 15

    C.  AS VIGOROUSLY ARGUED BEFORE THE DISTRICT
       COURT, VOLUNTARILY DISMISSING ASHTON
       PARSONS' COMPLAINT IN NO WAY PREJUDICED
       PRMC. ........................................................................................ 20

    D.  THE DISTRICT COURT MISCHARACTERIZED THE
       SIGNIFICANCE OF WHAT HAD TRANSPIRED IN THE
       COURSE OF LITIGATION. ............................................................ 23

E.  THE DISTRICT WAS WITHOUT AUTHORITY TO IMPOSE
SANCTIONS FOR THE FEES RELATED TO PRMC'S
MOTION TO COMPEL DISCOVERY ............................................ 28

CONCLUSION ........................................................................................ 29

REQUEST FOR ORAL ARGUMENT ........................................................ 29

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a) .......... 30

CERTIFICATE OF SERVICE .................................................................... 31

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Blue v. U.S. Dept. of Army*,
  914 F.2d 525 (4th Cir., 1990) ................................................................... 26

*Carroll v. Wolpoff & Abramson,*
  53 F.3d 626 (4th Cir.1995) ....................................................................... 11

*Chaudhry v. Gallerizzo*,
  174 F.3d 394 (4th Cir. 1999) ......................................................... 11, 12, 19

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) ........................... 13, 26

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ........................... 11

*Davis v. USX Corp.*,
  819 F.2d 1270 (4th Cir. 1987) ....................................................... 20, 21, 27

*Durham v. Florida East Coast Railway Co.*,
  385 F.2d 366 (5th Cir. 1967) ................................................................... 21

*Fox v. Vice* ,
  ____S. Ct. ____, ___ U.S. ____
  (Docket No. No. 10-114, dec'd June 6,2011) ........................ 12, 13, 14, 22

*Holiday Queen Land Corp. v. Baker,*
  489 F.2d 1031 (5 Cir.1974) ....................................................................... 21

*In re Pittcon Industries, Inc.*,
  953 F.2d 1383 (4th Cir. 1992) ................................................................. 17

*In re TCI, Ltd.*,
  769 F.2d 441 (7th Cir.1985) ..................................................................... 26

*In Re: Gould,*
  (4th Cir. Docket No. 00-2256, decided October 7, 2003) .............. 12, 19, 20

*Kentucky* v. *Graham,*
   473 U. S. 159 (1985) ............................................................... 13

*McCants v. Ford Motor Co.,*
   781 F.2d 855 (11 Cir.1986) ................................................... 22

*S.A. Andes v. Versant Cop.*,
   788 F.2d 1033 4th Cir. 1986) ................................................ 20

*Smith v. BIC Corp.*,
   869 F.2d 194 (3d Cir.1989) ................................................... 18

*United States v. Wallace,*
   964 F.2d 1214 D.C. Cir. 1992)......................................... 12, 19

*Young v. Southern Pacific Co.*,
   25 F.2d 630 (2d Cir. 1928)............................................. 21, 27

**Statutes**

15 U.S.C. §1692k(a)(3).......................................................... 11

28 U.S.C. §1291.................................................................... 1

28 U.S.C. §1331.................................................................... 1

28 U.S.C.§1927.................... 1, 3, 10, 11, 12, 13, 14, 17, 19, 26, 29

42 U.S.C §1988........................................................ 12, 13, 14

42 U.S.C. §12101, *et seq.* .............................................. 1, 5

42 U.S.C. §110001, *et seq*. ................................................ 16

Md. Code. Ann., State Government Article Section 20-601, *et. seq*............ 16

**Rules**

Rule 41(a)(2)................................................................ 21, 22

## STATEMENT OF JURISDICTION

This is an appeal from a judgment of the United States District Court for the District of Maryland imposing sanctions against plaintiff's counsel pursuant to 28 U.S.C.§1927. Sanctions were imposed after the plaintiff sought to voluntarily dismiss her complaint. The District Court had jurisdiction to hear her complaint under 28 U.S.C. §1331 because it raised a federal question by alleging violations of the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq*.).

The judgment from which this appeal is taken was entered on February 10, 2011. A timely notice of appeal was filed on March 8, 2011.

This court has jurisdiction to hear this appeal under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

Did the district court abuse its discretion when it imposed sanctions on plaintiff's counsel after he moved to voluntarily dismiss plaintiff's complaint when (a) there was no evidence that the attorney had acted in bad faith; and (b) no excess costs to defendant accrued because of counsel's conduct?

## STATEMENT OF THE CASE

This is an appeal from a judgment for $23, 657.75, an amount imposed as sanctions against Plaintiff's attorney under 28 U.S.C. §1927.

In its entirety §1927 provides:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As more fully explained below, the sanctions were imposed by orders dated May 3 and July 20, 2010 (**Docket Entries 37** and **43, A-53 and 102**) and reduced to judgment on February 10, 2011 (**Docket Entry 50, A-167**)

Plaintiff had moved to voluntarily dismiss her complaint (filed on December 3, 2008)  alleging that her employment had been terminated in violation of the Americans with Disabilities Act.  The District Court imposed the sanctions in large measure, but not entirely, because Plaintiff had filed a separate action on July 30, 2009, in the Circuit Court for Wicomico County, Maryland alleging a violation of the state law prohibiting disability discrimination. No proceeding had taken place in the state court action because service was not made until December 21, 2010. Plaintiff's motion to dismiss the federal action was filed on January 11, 2011.

In order to impose sanctions under §1927 there must be a finding that an attorney "multiplie[d] the proceedings . . . unreasonably and vexatiously", *i.e.,* in

bad faith. If that is established, an opposing party is entitled only to "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct "

The District Court erred because it had (1) no basis to conclude that litigation was initiated or maintained in bad faith; (2) no basis to conclude that counsel's conduct was unreasonable and vexatious, i.e., he acted in bad faith; and (3) no basis to conclude that any proceedings had taken in place in federal court that would not have taken place but for the filing of the state court cause of action.

## STATEMENT OF FACTS

Deborah Ashton Parsons (hereafter "Ashton Parsons"), the plaintiff below, is a nurse practitioner who was an employee of Peninsula Regional Medical Center (hereafter "PRMC"), the defendant below   On December 3, 2008 she sued PRMC alleging that her employment had been terminated because of her disability and after she sought a reasonable accommodation for her disability in violation of the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*; hereafter ADA)**(Docket Entry 1, A-8)**.  PRMC answered (**Docket Entry 4, A-19**) in timely fashion. It has claimed that Ashton Parsons was seen asleep in her car, and asserted that as the nondiscriminatory reason for terminating her employment.   These competing theories of motivation were never adjudicated because the action was dismissed on Ashton Parsons' own motion.

On March 5, 2009, a scheduling order issued (**Docket Entry 6**)".  Thereafter PRMC served Ashton Parsons with interrogatories and a request for production of documents; and on June 26, 2009 PRMC filed a motion to compel responses. Ashton Parsons, on July 3, 2009, moved to stay the court proceedings (**Docket Entry 10**); and stated that she would file a claim in state court by July 31, 2009. Her motion was granted on July 7, 2009 (**Docket Entry 11**). As she had said she would, she filed an action in the Circuit Court for Wicomico County, Maryland on

July 30, 2010. Service of the state law complaint, however, was not achieved until December 2010.

Following a September 8, 2010, conference call with the magistrate judge to whom the case had been assigned, the scheduling order was amended by extending the discovery deadline (**Docket Entry 13**), and on September 15, 2010 the Magistrate Judge issued an order denying PRMC's motion to compel discovery as moot (**Docket Entry 14**). No sanctions were imposed by the Magistrate Judge and no exceptions to her ruling have ever been taken.

On October 26, 2010 Ashton Parsons moved for a second amendment to the scheduling order so that she could take further discovery (**Docket Entry 15**). This motion was consented to in part and opposed in part. The Magistrate Judge extended the discovery deadline for limited purposes by order dated December 2, 2010 (**Docket Entry 22**).

In short, discovery was completed within the modified deadlines set by the Court.

On December 2, 2010, a copy of the state law complaint was provided to PRMC's counsel. In an email, dated December 30, 2009, Defendant's counsel wrote:

> When we spoke on December 21, 2009, one of the topics we discussed was an extension to Peninsula for responding to the state court complaint you filed in Wicomico County. You mailed me a courtesy copy on December 2, 2009. As of December 21, Peninsula

6

had not been formally served. I advised you that I was authorized to accept service and we needed to work out the date of service so I could calendar our response. I asked for you to consider Peninsula served on December 21, 2009, and that our response to the Complaint would then be due 30 days from that day.(**A-125**)

On January 11, 2011 Ashton Parsons moved to voluntarily dismiss her federal complaint without prejudice (**Docket Entry 24, A-25**).  The next day PRMC moved for an extension of time to file a motion for summary judgment; and on January 13, 2011, the District Court extended the time for filing the motion pending its ruling on plaintiff's motion to voluntarily dismiss her complaint (**Docket Entry 28**)

When PRMC opposed her motion to voluntarily dismiss her complaint without prejudice, Ashton Parsons amended her motion to state that, while she continued to seek dismissal on that basis, she was alternatively moving for a dismissal with prejudice (**Docket Entry 28**).  PRMC continued to oppose her efforts to end the litigation (**Docket Entries 25 and 30, A-28 and 43**).

PRMC did not file a motion for summary judgment until February 18, 2011, the day before the hearing on Ashton Parsons motion to voluntarily dismiss.  The motion was never decided by the District Court; and PRMC has made no claim for reimbursement for attorneys fees related to the motion.

Ashton Parsons moved for an extension of time in which to reply to PRMC's motion for summary judgment. PRMC opposed the motion, and, when

Ashton Parsons filed a reply to the opposition, PRMC filed a surreply. The District Court granted the extension. (**Docket Entries 33 to 37**).

On May 3, 2011 the District Court granted Ashton Parsons' motion to voluntarily dismiss her complaint (Docket Entry .   The dismissal was with prejudice.

The May 3rd order also invited PRMC to file a motion for attorneys' fees; and on May 25, 2011 it filed a motion (**Docket Entry 37, A-53**), which Ashton Parsons opposed (**Docket Entry 41, A-98**). PRMC filed a reply to the opposition (**Docket Entry 42**).

On July 20, 2011 the District Court granted the motion (**Docket Entry 43, A-102**)

On August 6, 2011, PRMC filed a statement of fees claiming a total of $31,043.50 (**Docket Entry 40, A-65**) of which the District Court, on February 10, 2011, awarded $23,657.75 (**Docket Entry 50, A-167**)– a difference of $7,385.50. The District Court explained how it arrived at the lesser figure in the memorandum order accompanying the judgment (**Docket Entry 49**).

PRMC had claimed it expended: (1)$3,947.50 regarding the motion to compel that had been denied as moot; (2) $2,808.00 opposing the motion for extension of the discovery deadline that was granted; (3) $15,486.75 related to opposing Ashton Parsons motion of voluntary dismissal that was granted; and

$8,851.50 related to preparing its motion for fees and statement of fees (**Docket Entries 44 and 47, A-108** and **A-122**).  No claim, as previously noted, has been made for fees related to PRMC's motion for summary judgment.

On March 8, 2011, a timely notice of appeal was filed by Ashton Parsons (**Docket Entry 51,A-168**).

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion when it imposed sanctions on plaintiff's counsel pursuant to 28 U.S.C. §1927.

First, the essential predicate to the imposition of sanctions is a finding of bad faith conduct.  There was no bad faith conduct; and a finding of negligence or other conduct that is described negatively is an insufficient basis for imposing fees.

Second, only those costs and fees that the party seeking sanctions would have incurred but for bad faith conduct may be imposed.  Because no proceedings were duplicated in bad faith or otherwise there were no excess costs or fees.

Third, suit was filed in good faith and dismissed as a matter of discretion and in the interest of judicial economy.

Fourth, the party that was awarded sanctions was not prejudiced by any conduct by plaintiff's counsel.

## STANDARD OF REVIEW

When reviewing the imposition of sanctions an appellate court determines if a district court abused its discretion. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999) (reviewing sanctions imposed under F.R.Civ.P. Rule 11) *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 628-29 (4th Cir.1995) (determining that abuse of discretion standard governs review of awards under § 1692k(a)(3)); *Miltier v. Beorn*, 896 F.2d 848, 855 (4th Cir.1990) (reviewing sanctions award under §1927 for abuse of discretion.); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

# ARGUMENT

**A.    SANCTIONS CANNOT BE IMPOSED WITHOUT A FINDING OF BAD FAITH AND THAT THE FEES CLAIMED AS SANCTIONS WOULD NOT HAVE BEEN INCURRED BUT FOR THE BAD FAITH CONDUCT.**

This Court has unequivocally held that before sanctions may be considered under §1927 it must be found that counsel acted in bad faith.

> "Merely negligent conduct will not support an imposition of sanctions under 28 U.S.C. §1927. See *United States v. Wallace,* 964 F.2d 1214, 1219 (D.C. Cir. 1992). Instead, §1927 requires "a finding of counsel's bad faith as a precondition to the imposition of fees." See *Chaudhry v. Gallerizzo,* 174 F.3d 394, 411 n.14 (4th Cir. 1999) (internal quotations omitted). Thus, § 1927 authorizes sanctions only when counsel's bad faith conduct multiplies the proceedings, resulting in excess costs for the opposing party." Emphasis added.

*In Re: Gould*, (4th Cir. Docket No. 00-2256, decided October 7, 2003).

Additionally, there must be a finding that the claim for sanctions is based on fees and expenses but for the bad faith conduct would not have been incurred.

The Supreme Court in *Fox v. Vice*  , ____S. Ct. ____, ___ U.S. ____ (Docket No. No. 10-114, dec'd June 6,2011) made this clear, reversing the imposition of sanctions imposed under 42 U.S.C §1988, which provides for an award of fees to a prevailing defendant if the suit against the  defendant is

"frivolous, unreasonable or without foundation". [1]  This is analogous to §1927's bad faith standard.

Fox sued Vice over a disputed municipal election for chief of police alleging both federal and state law causes of action. At the end of discovery Vice moved for summary judgment on Fox's federal claims; and Fox conceded that his claims were "not valid". *Id*., at p. ____   Vice then sought and was awarded attorney fees. The Supreme Court reversed the district court's award of sanctions which the appellate court affirmed. [2]  Noting that there had been no effort to determine what effort was expended on the presumably nonfrivolous state law claims, the Court said:

> "The District Court granted the motion for attorney's fees on the ground that Fox's federal claims were frivolous. Although the state-law allegations had not been found frivolous (and indeed remained live), the court did not require Vice to separate out the work his attorneys had done on the two sets of claims." *Id*., at p. ____

---

[1]  "In *Christiansburg,* we held that §1988 also authorizes a fee award to a prevailing defendant, but under a different standard reflecting the "quite different equitable considerations" at stake. *Id.,* at 419. In enacting §1988, we stated, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis." *Id.,* at 420. Accordingly, §1988 authorizes a district court to award attorney's fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.,* at 421; see also *Kentucky* v. *Graham,* 473 U. S. 159, 165, n. 9 (1985)."

[2]  "[T]he District Court observed that "[a]ny trial preparation, legal research, and discovery may be used by the parties in the state court proceedings.", at p. ____

In the case at bar, there was no (and there can be no) finding that Ashton Parsons' federal claims were frivolous, and like Fox, her state claims had yet to be adjudicated. And, again, as was the case in *Fox*, the District Court made no effort to separate out the work PRMC's attorneys had done that would have been immediately transferable to the state court proceedings.

In accord with the Supreme Court's holding in Fox, the District Court was required to disallow the imposition of fees for work that was transferable to Ashton Parsons' cause of action in state court.

> "[S]tated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim.* * * [I]f the defendant would have incurred those fees anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the expense to the plaintiff. Suppose, for example, that a defendant's attorney conducts a deposition on matters relevant to both a frivolous and a non-frivolous claim—and more, that the lawyer would have taken and committed the same time to this deposition even if the case had involved only the non-frivolous allegation. In that circumstance, the work does not implicate Congress's reason for allowing defendants to collect fees. The defendant would have incurred the expense in any event; he has suffered no incremental harm from the frivolous claim."

This hypothetical by Justice Kagan, writing for a unanimous Supreme Court, is remarkably similar to the facts in the instant case. It clearly illustrates why the Court's finding that PRMC was "forced" to litigate through the end of discovery is a wholly improper basis on which to premise §1927 sanctions.

14

**B.    SUIT WAS BROUGHT IN THE DISTRICT COURT IN GOOD FAITH. IT WAS NOT ONLY A LEGITIMATE EXERCISE OF DISCRETION TO VOLUNATARILY SEEK ITS DISMISSAL, IT WAS IN THE INTEREST OF JUDICIAL ECONOMY TO DO SO.**

Ashton Parsons had reasonable grounds to assert that her employment had been terminated because of her disability and/or because she had requested an accommodation, *i.e.*, that she was entitled to relief under the Americans with Disabilities Act. [3]  No suggestion to the contrary has been made; [4]  and the District Court, in imposing sanctions, made no inquiry into the matter. Accordingly, it cannot be said that her suit was brought or maintained in bad faith.

Instead of focusing on this fact, however, the District Court focused on Ashton Parsons' choice to avail herself of remedies under Title 20 of the State Government Article of the Annotated Code of Maryland in the Circuit Court for Wicomico County, Maryland.

In order to properly understand how it came to be that Ashton Parsons filed claims in both federal and state court it is necessary to outline the administrative recourse that must be exhausted before a civil action can be filed.

---

[3]   Various contradictions in PRMC's explanation for the termination of her employment and other facts supporting her belief were revealed in Ashton Parsons' pursuit of unemployment insurance benefits. She succeeded in obtaining those benefits after an appeal to the Circuit Court for Baltimore County, Maryland.

[4]   This is not to ignore the arguments made by PRMC in its late filed and never adjudicated motion for summary judgment.

15

Both the Americans with Disabilities Act (ADA), 42 U.S.C. §110001, *et seq*. and Section 20-601, *et. seq* of the State Government Article of the Annotated Code of Maryland (hereafter "Title 20") [5] prohibit disability discrimination; and both require exhaustion of administrative remedies before a complaint seeking judicial relief may be filed.

The EEOC is the sole administrative agency with jurisdiction to consider violations of the ADA.  Title 20 also permits recourse to the EEOC, but further allows recourse to the Maryland Civil Rights Commission (prior to July 1, 2011 known as Maryland Human Relations Commission) and fair employment practice agencies that exist is several Maryland counties.

Ashton Parsons chose to pursue her administrative remedies with the EEOC, thereby beginning the exhaustion requirements required by both the federal and state law.  The EEOC issued a "notice of right to sue" without making any finding regarding the existence or absence of discrimination. To maintain a claim under the ADA Ashton Parsons had to file a claim in the District Court of Maryland within 90 days of receiving the notice; and she did so on December 3, 2008.

The Maryland law, by contrast, prohibited Ashton Parsons from initiating suit until at least 180 days had elapsed from the time she first filed with the EEOC.

---

[5]  The Maryland statute was codified previously as Article 49B of the Annotated Code of Maryland.

[6] In other words, she could not file a state law claim at the time she filed her ADA claim in federal court.[7]

These inconsistent requirements of federal and state law resulted in two parallel, and largely, but not entirely, identical suits being filed at two different times. While at first blush it may seem that because two actions were filed proceedings must have been multiplied. As more fully explained below, that was simply not so here.

When asked by the District Court to explain, why a federal complaint was filed Ashton Parsons counsel explained: "it's incumbent upon me to preserve options until such time as I know [what option is best for my client]. **(A-190)**

Without a particular showing of bad faith conduct which might seem to be sanctionable cannot trigger §1927.

This Circuit distinguished questionable conduct with bad faith conduct in the case of *In re Pittcon Industries, Inc.*, 953 F.2d 1383 (4th Cir. 1992). In reversing an award of sanctions the Court said:

---

[6] Title 20 further requires a complaint to be filed no later than two years after the alleged discrimination has occurred. This is to say that once the 180-day requirement has been fulfilled a putative plaintiff may file at any time thereafter within the two-year The earliest date Ashton Parsons could bring a state law claim would have been in early, 2009. She could have filed as late as the second anniversary of the termination of her employment in 2010. There is no question that Ashton Parson complaint was timely filed on July 30, 2009.

[7] For the same reason she could not file a pendant state law claim in federal court.

Of course, over-broad discovery requests can be made with the intent unreasonably and vexatiously to multiply the judicial proceedings before a court. * * * To the extent the discovery requests they made were over-broad, it cannot be said on this record that they were made in bad faith, unreasonably and vexatiously to multiply the proceedings before the bankruptcy court, rather than with the intent to litigate the matter aggressively. Cf. *Smith v. BIC Corp.*, 869 F.2d 194, 202 (3d Cir.1989) (affirming order quashing subpoenas because information sought was irrelevant, but vacating sanctions because counsel's actions were "more indicative of vigorous advocacy than ... bad faith").

Ashton Parsons had several options as a matter of right given that she had a cause of action under Maryland's Title 20, as well as, the ADA. She could have filed both the ADA and Title 20 claims in federal court, she could have filed both of them in state court (subject to removal), she could have filed an action under one statute, but not the other, or she could have filed separate federal and state actions. That she chose the later is not evidence of bad faith and did not result in multiplication of proceedings. It was an exercise of her rightful options.

It is important to note that while Ashton Parsons filed separate federal and state actions, she did not seek to actively pursue both at the same time. Instead, she pursued discovery in federal court because that cause of action was, of necessity, filed first. And she could take no action in state court until service had been made. Once that happened she promptly moved to dismiss the federal action.

Her counsel explained this to the District Court and pointed out that after service of the state complaint was effectuated on December 21, 2009, he moved to voluntarily dismiss within three weeks (and soon after the Christmas and New

Year holidays) on January 11, 2010 (**A-125**).  No proceedings were conducted in state court during this time. [8]

How this was seen by the District Court as exhibiting bad faith, rather than a valid exercise of judgment is difficult to fathom. Even if doing so is deemed to have been bad lawyering or described in any other negative terms, the requirements of §1927 were not met.

> Merely negligent conduct will not support an imposition of sanctions under 28 U.S.C. §1927. See *United States v. Wallace,* 964 F.2d 1214, 1219 (D.C. Cir. 1992). Instead, §1927 requires "a finding of counsel's bad faith as a precondition to the imposition of fees." See *Chaudhry v. Gallerizzo,* 174 F.3d 394, 411 n.14 (4th Cir. 1999) (internal quotations omitted). Thus, § 1927 authorizes sanctions only when counsel's bad faith conduct multiplies the proceedings, resulting in excess costs for the opposing party. Emphasis added.

*In Re: Gould*, (4th Cir. Docket No. 00-2256, decided October 7, 2003).

In *Gould* plaintiff's attorney disregarded explicit instructions and agreements and asked impermissible questions of a witness, requiring a full-day hearing to determine if a mistrial occurred.  The District Court declared a mistrial and imposed sanctions. under § 1927  this Court  upheld the award stating:

> The attorney's costs incurred by the Group for the mistrial proceedings were in no way related to the merits of its defense and were not expenses that the Group would have incurred absent Gould's conduct. We agree with the district court that Gould multiplied the proceedings resulting in excess costs for PEG within the meaning of § 1927.

---

[8]  In fact, the state court complaint was dismissed without any proceedings having occurred. An appeal of the dismissal was withdrawn as part of a settlement between the parties.

Gould plainly engaged in misconduct and his conduct stands in sharp contrast to the conduct on which the District Court premised the imposition of sanctions. Here plaintiff's counsel was faulted for deposing whose testimony was equally applicable to both the federal and state claims (as was all other discovery) and which would not be repeated in state court, [9] for resolving a motion to compel before the magistrate judge ruled on it, for twice asking for and obtaining extensions of the discovery period and, finally, for seeking to voluntarily dismiss the federal suit.

Although sanctions were not requested for PRMC's attorneys fees incurred in defense of depositions, the District Court's decision to invite the imposition of sanctions was clearly triggered by its belief that PRMC had been "forced" to litigate through discovery.

## C.     AS VIGOROUSLY ARGUED BEFORE THE DISTRICT COURT, VOLUNTARILY DISMISSING ASHTON PARSONS' COMPLAINT IN NO WAY PREJUDICED PRMC.

It is well settled that a motion "should *not* be denied absent *substantial prejudice* to the defendant." (Emphasis added) *S.A. Andes v. Versant Cop.*, 788 F.2d 1033, 1036 (4th Cir. 1986); See also *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). This Circuit has held that substantial prejudice to the

---

[9] Any attempt to do so could and almost certainly would be barred by the circuit court judge.  It should be remembered that the state court proceeding would have, in fact, been expedited because of what had occurred in federal court.

20

defendant under 41(a)(2) is not shown by the mere fact that a plaintiff seeks to transfer litigation to state court. *Davis*,

819 F.2d at 1275 (citing *Young v. Southern Pacific Co.*, 25 F.2d 630, 632 (2d Cir. 1928), in which Judge Learned Hand stated, "[o]rdinarily the mere fact that a plaintiff prefers the state courts ought not prevent his discontinuing his suit; one court is as good as another.").

In fact, the Fourth Circuit in *Davis* cited with approval the following appellate decisions that held defendant had failed to demonstrate the substantial prejudice required by Rule 41.

"In *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366 (5th Cir.1967), the plaintiff sought voluntary dismissal after three weeks of trial in order to start the litigation anew because the plaintiff's motion to amend his complaint to account for newly discovered evidence had been denied as untimely. The Fifth Circuit reversed the order of the district court denying dismissal because the record failed to disclose 'any prejudice to the defendant ... other than the annoyance of a second litigation upon the same subject matter.' Id. 385 F.2d at 369. See also *Holiday Queen Land Corp. v. Baker,* 489 F.2d 1031 (5 Cir.1974) (district court abused its discretion by refusing to dismiss action without prejudice due to prospect of second suit despite contention by the defendant that the subsequent suit would be frivolous). Most recently, in *McCants* [ *v. Ford Motor Co.,* 781 F.2d 855,

21

857 (11 Cir.1986)], *supra*, the Eleventh Circuit held that it was not an abuse of discretion for the district court of Alabama to dismiss voluntarily a suit without prejudice even though the plaintiff intended to refile his claim in the state courts of another state in order to escape the bar of Alabama's statute of limitations. The court concluded that the loss of a valid statute of limitations defense does not constitute a bar to dismissal under Rule 41(a)(2). 781 F.2d at 859 [footnote omitted]."

As stated in Ashton Parsons' reply to PRMC opposition to her motion to voluntarily dismiss her complaint: "Here Defendant predicates its claim of prejudice only on the fact that it had engaged in discovery and that the federal complaint could have been dismissed prior to discovery. This falls far short of what the Fourth Circuit has found to be substantial prejudice."  Just as importantly, it does not comport with the Supreme Court's holdings in *Fox*, *supra*.

The District Court ignored the fact that plaintiff's counsel had selected a rightful option available to plaintiff when litigation was pursued in federal court until service of the state complaint was made,  And  it ignored the fact that no proceedings had been multiplied in the course of the federal litigation.  Instead the Court conflated the fact that Ashton Parsons had filed a separate state law claim with (1) a defense motion to compel discovery that was dismissed as moot; and (2) two requests for an extension of the discovery deadline that, among other things,

accommodated defense counsel and was also granted – motions the Court termed "spurious".

It would appear that the District Court felt that the federal courts had been burdened by Ashton Parsons claim when it need not have been had she pursued her state claims alone or had she dismissed her federal claim sooner. Ashton Parsons availed herself of the federal judicial system, as she had the right do, because she had a colorable ADA claim. Pursuing her claim in federal court and deferring pursuit of her state law claim until service was accomplished was a proper exercise of discretion and, even if described in negative terms, was not done in bad faith.

### D. THE DISTRICT COURT MISCHARACTERIZED THE SIGNIFICANCE OF WHAT HAD TRANSPIRED IN THE COURSE OF LITIGATION.

The District Court imposed the sanctions because, in the Court's opinion, "[p]laintiff counsel[] dismiss[ed]. . . .the lawsuit, only after forcing PRMC to participate in full discovery, respond to spurious motions, and to prepare for and submit a motion for dispositive relief . . ."

The District Court did not acknowledge several critical and undisputed facts. Had the Court done so it could not have drawn the conclusion that it did.

First, the Court did not acknowledge that the discovery in federal court was identical to what would have been taken in state court and that it was intended to be introduced in those proceedings. [10]

Second, the only motions were a motion to compel discovery, which was dismissed as moot, two routine motions to extend the discovery deadline, which were granted, and the motion to voluntarily dismiss the complaint. These motions cannot be fairly termed "spurious".

Third, it was plaintiff's counsel who suggested that the deadline for filing dispositive motions be extended by consent.

Fourth, it was Ashton Parsons' counsel who suggested that the motions be extended, which it was (Docket Entry 28).

---

[10] THE COURT: Okay. Now as I suggest that one of the things that comes up because I've said I take it that the plaintiff wants to go to state court, file in state court because of two reasons. One is presumably it likes the definition of disability better under state law better. And two, he got himself into a position in which he did not do the discovery that he wanted in federal court because of various deadline problems. Okay.
* * *
MR. GAGLIARDO: We did get all the discovery taken. * * * I moved within the appropriate period of discovery for an extension. The magistrate judge, Judge Gauvey, granted that motion. She granted that limited discovery and I took it, so I'm really -- and Ms. Hyatt makes much of the fact that this is about my need to take more discovery. * * * [T]here may be no further discovery, or there may be one fact witness if [opposing counsel] asserts that witness is within the controlled group and can't be interviewed. **A-174**.

Fifth, no motion for summary judgment was filed until the day before the hearing on the motion to voluntarily dismiss. Doing so at that late date was both unnecessary and, a bald attempt to, in the words of the District Court, "up the ante" (**A-184).**

Sixth, and most importantly, PRMC never sought reimbursement for fees associated with its motion for summary judgment.

Finally, no proceeding had taken place in the state court action at the time of the Court's imposition of sanctions and none has since. The state court action was dismissed, an appeal taken, and the appeal withdrawn as settlement of the dispute between the parties.

The Court also noted four particular aspects of Plaintiff's counsel's motives and conduct as the premise for awarding sanctions:

> "[1] According to Plaintiff's counsel, he filed the instant lawsuit in this Court without– he now contends – the intent of pursuing the case in federal court. Yet, [2] Plaintiff's counsel delayed instituting proceedings in state court and [3] failed, repeatedly, to meet his discovery obligations in this case. [4] Plaintiff's counsel now seeks to avoid responding to a pending summary judgment motion, and, thus, wishes to dismiss the instant case with prejudice and accept the consequences of such a dismissal.

First, as noted above, counsel filed a federal action to preserve and assess Ashton Parsons best options.

Second, Ashton Parson filed a timely state court action and did so within the time frame that had been set forth in her motion staying the federal action.

25

Third, there was a single set of discovery requests that was responded to late, and defendant's motion to compel a response was dismissed as moot.

Fourth, PRMC has not claimed the expense of its motion for summary as assessable under §1927.

Finally, one is compelled to ask if avoiding a motion for summary is evidence of bad faith? Assuming *arguendo* that Ashton Parsons' counsel was so motivated, does §1927 require him to soldier on or face sanctions? Would not doing so require the Court to expend considerable time to review the motion, opposition and reply and then write a lengthy opinion? And if the federal suit had not been dismissed voluntarily and had the matter proceeded to be disposed of by summary judgment or otherwise would that not have multiplied the proceedings if one applies the logic of the District Court's decision.

The answer to these questions was suggested by this Circuit in *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 537 (4th Cir., 1990):

> The Supreme Court contemplated as much when, in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), it indicated that sanctions are appropriate for pursuing a case after it becomes clear that the case is without merit. The Court noted that sanctions are appropriate where a "plaintiff is found to have brought or continued such a claim in bad faith." Id. at 422, 98 S.Ct. at 701 (emphasis added). "[D]ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

If the District Court was right that Ashton Parson's counsel was avoiding summary judgment in favor of PRMC then counsel was correct to move to dismiss the suit.

Additionally, as explained to the District Court at the hearing on Ashton Parsons' motion to dismiss, Maryland's Title 20 has a broader definition of disability and Ashton Parsons intended to seek relief in Maryland courts, where she might have a greater chance of prevailing. If she chose to avoid the risk that summary judgment would be granted for PRMC because she might not be able to meet the ADA's narrower definition she had the right to do so. *Davis*, supra.

Ashton Parsons had no obligation to continue litigating the ADA claim in federal court and might have incurred sanctions had she continued. She had the right to choose the forum considered to be more favorable because "[o]rdinarily the mere fact that a plaintiff prefers the state courts ought not prevent his discontinuing his suit; one court is as good as another." *Young v. Southern Pacific Co*., 25 F.2d 630, 632 (2d Cir. 1928),, as cited in *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987), *supra*.

27

## E.    THE DISTRICT WAS WITHOUT AUTHORITY TO IMPOSE SANCTIONS FOR THE FEES RELATED TO PRMC'S MOTION TO COMPEL DISCOVERY

The District Court was without authority to impose sanctions for fees related to PRMC's motion to compel discovery for two reasons.

First, the Magistrate Judge had declined to impose sanctions and no exceptions were ever filed.

Second, as stated above there was no attempt to determine if the delay in responding was, e.g., mere negligence or done in bad faith.

## CONCLUSION

The District Court mischaracterized the conduct of litigation by Ashton Parsons' counsel; and failed to distinguish between bad faith conduct and other conduct, however negatively described, that does not rise to the level of bad faith. Because there is no factual predicate for a finding of bad faith the District Court abused its discretion when it imposed sanctions pursuant to 28 U.S.C. §1927.

The District Court also abused its discretion by failing to recognize that PRMC did not incur excess costs and fees but for counsel's conduct.

For these and such other reasons as may become known to the Court, the February 10, 2011 judgment of the District Court imposing sanctions on Ashton Parsons counsel should be vacated.

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument.

Respectfully submitted,


/s/ Thomas J. Gagliardo
THOMAS J. GAGLIARDO
THE GAGLIARDO LAW FIRM
8401 Colesville Road
Suite 315
Silver Spring, MD 20910-3312
(301) 589-1900

*Attorney for Appellant*

29

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
### No. 11-1258  Caption: <u>Gagliardo v Peninsula Regional Med. Ctr.</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's
Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's
Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or
Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used
only with monospaced type]*

[ X ]   this brief contains  6,068  words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[  ]    this brief uses a monospaced typeface and contains _____ lines
        of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
      because:
*[14-point font must be used with proportional typeface, such as Times New Roman
or CG Times; 12-point font must be used with monospaced typeface, such as
Courier or Courier New]*

[ X ]   this brief has been prepared in a proportionally spaced typeface using
        MS Word 2003 in 14 point Times New Roman font; *or*

[  ]    this brief has been prepared in a monospaced typeface using
        MS Word 2003 with____characters per inch _____ font

August 15, 2011                          /s/ Thomas J. Gagliardo
                                         Thomas J. Gagliardo
                                         Attorney for Appellant

# United States Court of Appeals
## for the Fourth Circuit

*Thomas J. Gagliardo v. Peninsula Regional Medical Ctr*, No. 11-1258

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THE GAGLIARDO LAW FIRM, Attorney for Appellant to print this document. I am an employee of Counsel Press.

On **August 15, 2011**, Counsel for Appellant has authorized me to electronically file the foregoing **Brief of Appellant** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

RANDI K. HYATT
ADAM T. SIMONS
KOLLMAN & SAUCIER, PA
The Business Law Building
1823 York Road
Timonium, MD 21093-0000
(410) 727-4300

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

August 15, 2011                                    /s/ Robyn Cocho
                                                   Counsel Press

31